Andrew Guidi
DELANEY WILES HAYES GERETY
ELLIS & YOUNG, INC.
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
  (907) 279-3581
  (907) 277-1331 fax
*Attorneys for Defendant*
*NORTHWIND MARINE, INC.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| DONALD G. MUNHOVEN, SUANN A. MUNHOVEN, DONALD T. MUNHOVEN, And SUANN A. MUNHOVEN as the Natural Parent and Guardian Of MILES L. MUNHOVEN, a Minor Child,<br><br>    Plaintiffs,<br><br> v.<br><br>NORTHWIND MARINE, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. K03-0004 CV (RRB) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2**

  Defendant Northwind Marine, Inc.'s ("Northwind") files this opposition to the plaintiffs' Donald G. Munhoven, Suann A. Munhoven, Donald T. Munhoven, and Miles L. Munhoven ("Munhoven" or "Plaintiffs") Motion *In Limine* No. 2. The plaintiffs seek to preclude any questioning of the jury during *voir dire* regarding people who have been injured or killed in explosions while welding on boats in Ketchikan. The plaintiffs also seek to

exclude any evidence at trial regarding people who have been injured or killed in explosions while welding on boats in Ketchikan. The Court should deny the plaintiffs' motion because: (1) questioning jurors regarding whether they have knowledge of people who have been injured or killed in explosions while welding on boats in Ketchikan is appropriate to evaluate the potential biases and prejudices of the jurors; and (2) evidence that other people have been injured or killed in explosions while welding on boats in Ketchikan is relevant to assist the jury in evaluating Donald G. Munhoven's comparative fault. Mr. Munhoven admitted that he knew of a person who had been injured or killed welding on a boat in Ketchikan. There is evidence that despite his knowledge, Mr. Munhoven nonetheless decided to weld on the hull of his boat, outside the center compartment containing a fuel tank, which resulted in an explosion.

## I.   FACTUAL AND PROCEDURAL HISTORY

In February 1997, Donald Munhoven ordered an aluminum hulled skiff to be built for him by Northwind. Complaint 1-3. Munhoven received the skiff in late March 1998. Answer at 2. Over the next four-and-a-half years, Munhoven and his family used the boat extensively. Complaint at 3. During this time, at Munhoven's request, Northwind promptly made repairs to some minor cracks on certain welded joints at no cost to Munhoven and

offered to pay a local welder to repair others. *Id.* at 3-4. In late 2001, Munhoven began to notice that the center compartment sounded as if it had liquid inside of it. *Id.* at 4. On December 8, 2001, worried that the hull might have a leak, Munhoven and his son lashed the skiff to the underside of their dock at high tide. *Id.* at 4-5. When the tide fell, the hull was exposed, thus permitting inspection. *Id.* To better examine the hull for any small cracks, Munhoven presently claims that he decided to remove a portion of the bottom paint at the port chine using an electric grinder fitted with a wire brush. *Id.* at 5. Munhoven claims that immediately upon touching the grinder to the hull, the boat exploded. *Id.* He went to the emergency room at Ketchikan General Hospital, where he was seen by Dr. Ernest Meloche. Dr. Meloche's report states, "The patient is a 45 year old male who while welding on a boat set off a gas explosion." Exh. A at 1 (Ketchikan Hospital record). The emergency room nurse also noted that Munhoven "blew [the] skiff up welding." Exh. B at 1 (Emergency Department Records). Six months later, Mr. Munhoven prevailed upon Dr. Meloche to write a supplemental report stating that his previous reference to welding was a mistake and that Munhoven was really grinding. *Id.* at 2.

  Thus, Mr. Munhoven has admitted that on the day of the accident he heard a sloshing sound in the center compartment of

his skiff; that he did not know the nature or source of the liquid, Exh. C at 202 (Donald G. Munhoven Deposition), but was aware that the fuel tank was in the center compartment. He has also admitted that he knew of a person in Ketchikan who "killed himself" as a result of welding on a boat. Even apart from this incident, however, Mr. Munhoven agreed that "as a matter of common sense" it is a "bad idea to weld on a closed container or tank, particularly if you don't know what's inside." Exh. C at 59. Furthermore, Munhoven admits he owned welding equipment at the time of the accident. Exh. C at 57-58. Although he now denies he was engaged in welding, the records of Ketchikan General Hospital on the day of the accident contradict him. Under all of these circumstances, Munhoven's knowledge of the danger explosion from welding on the hull of a boat is clearly relevant and material to the issue of comparative fault.

## II.  ARGUMENT

### A.  Jurors May Be Questioned During *Voir Dire* About Topics To Establish A Juror's Biases And Prejudices

A defendant has the right to receive a fair trial with an impartial jury. U.S. Const. Amend VII; *Darbin v. Nourse*, 664 F.2d 1109, 1112-1113 (9th Cir. 1981). "The bias or prejudice of even a single juror would violate the defendant's right to a fair trial. One important mechanism for ensuring impartiality is voir dire, which enables the parties to probe potential

jurors for prejudice." *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

> The voir dire examination plays a critical role in securing the right to an impartial jury in civil, as well as criminal, trials. The principal purpose of voir dire is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice. Thus, a voir dire examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause.

*Darbin v. Nourse*, 664 F.2d 1109, 1112-1113 (9th Cir. 1981); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

Courts may use either the actual bias or the implied bias doctrines to remove a biased juror. *See United States v. Wood*, 299 U.S. 123, 133 (1936). Actual bias is bias in fact. *See id.* A juror is actually biased if there is evidence that proves the juror has a predisposed belief that will sway the juror's judgment. *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554-56 (1984). Implied bias is bias conclusively presumed as a matter of law. *See Wood*, 299 U.S. at 133. A court will imply bias if there is enough evidence to infer, though not necessarily prove, that the juror cannot decide the case impartially because of the juror's predisposed mental attitude. *See McDonough*, 464 U.S. at 544-55. When a prospective juror's background and experiences demonstrate that the juror could be

biased or prejudiced in the case, the juror must not be allowed to sit on the jury. *Dyer*, 151 F.3d at 973. Courts have therefore removed jurors from cases where the juror's knowledge and background reveal the jury would be biased. For example, in a case involving kidnapping and murder, a juror would be biased and not be able to impartially sit on the jury if the juror and the juror's family had knowledge of and experienced burglaries, thefts, attempted rapes, and murders. *Id.* at 973, 975-76.

This case involves a boat exploding when Mr. Munhoven and his son were in the process of working on the boat, resulting in injuries to Mr. Munhoven and his son. Members of the jury could harbor biases and prejudices if they had knowledge of or personally experienced injuries (or knew of other people who had) as a result of working on a boat and having the boat explode. Northwind has the right to have an impartial and unbiased jury. It is certainly reasonable through the *voir dire* process to question the jury about the juror's knowledge regarding people who have been injured or killed in explosions while grinding, welding, or working on boats in Ketchikan or anywhere else. If in a drug case the jury can be questioned about their experiences and knowledge about drug crimes, or if in a car accident case the jury can be questioned about car accidents, then surely there is no logical reason to preclude questioning of this jury of their knowledge and experiences of

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2**
*Munhoven v. Northwind Marine, Inc.*, Case No. K03-004CV        Page 6 of 13

boats exploding while being worked on, grinded and/or welded on, as that is what this case involves.

In sum, to preserve Northwind's constitutional right to an impartial jury, Northwind has the right to question the jury regarding the underlying facts upon which this case is based to allow the jurors potential biases and prejudices to be made known. The Court must therefore deny the plaintiffs' motion.

**B. Northwind May Present Evidence Demonstrating The Plaintiff Was Comparatively Negligent**

  **1. Evidence of Welding Causing Boats To Explode Is Relevant**

Rule 401 of the Federal Rules of Evidence states that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A party has the right to present evidence and argument in support of its theory of the case. *United States v. Zuniga*, 6 F.3d 569, 571-72 (9th Cir. 1993). A party also has the right to have the jury determine whether the plaintiff was negligent and whether the plaintiff's damages were caused by the plaintiff's own conduct and should be reduced in proportion to plaintiff's contribution to his own loss or injury. *See Newby v. F/V Kristen Gail,* 937 F.2d 1439, 1442 (9th Cir. 1991); *Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co.*, 565 F.2d 1129, 1139 (9th Cir. 1977).

The plaintiff's knowledge of a danger or of engaging in negligent action may be considered is evaluating the plaintiff's claims and damages. *See, e.g., Ford v. GACS, Inc.*, 265 F.3d 670, 676 (8th Cir. 2001) ("The plaintiff's knowledge of a danger is one of the enumerated items of fault to be compared in a products liability case.").

Northwind will seek to demonstrate at trial that the Donald G. Munhoven was negligent in using an electric grinder and/or welder on the boat's hull outside the very compartment where the boat's fuel tank was located. In order for the jury to properly evaluate whether Mr. Munhoven was negligent, the jury must be allowed to consider Munhoven's actual knowledge regarding the potential dangers of welding or grinding on the hull of a boat in close proximity to the fuel tank. Clearly the fact that Mr. Munhoven had specific knowledge about the potential dangers of engaging in such actions and blatantly disregarded those dangers would support a finding of comparative fault. Northwind should therefore be permitted to present evidence that Mr. Munhoven knew that people had been injured or killed in explosions while welding on boats in the Ketchikan area or anywhere else.

For example, among other evidence demonstrating Mr. Munhoven's knowledge, are statements Mr. Munhoven himself has made that it would be a "really big mistake" to weld on a boat that has fuel in it:

> Q   Why do you care?  I mean what would have been the significance if you'd been welding on a boat?
>
> A   It just wasn't – there was an incident a year or two ago.  That somebody was welding on a skiff, and it blew up.  And they knew that there was gas, it was used for and all this stuff.  And so that wasn't the case here.
>
> A   Who was involved in that incident?
>
> Q   I don't remember the guys name.  It was, you quite the ordeal, killed himself and . . . .
>
> A   Was it reported in the local paper?
>
> Q   Probably yeah.  Yeah, it was probably in the paper.  And then there was just a – <u>it was a really big mistake</u> on his part.  He was a welder, and he knew that the boat was used for hauling gas, and it was like compartments with gas in it.  And it was where to fix the cracks, or whatever repairs that he was trying to repair, so . . . .

Exh. C at Tr. 239 (Donald G. Munhoven Deposition) (emphasis added).  And, as previously explained, there is evidence that Mr. Munhoven was welding and/or grinding on the hull of the boat at the time it exploded.  *See* Complaint at 5; Exh. A at 1 ("The patient is a 45 year old male who while welding on a boat set off a gas explosion."); Exh. D at 3 (David Cater Report).

The jury will need to determine whether a reasonably prudent person would grind or weld on the hull of a boat when there is fuel in the boat.  Mr. Munhoven's knowledge that other people have been injured grinding or welding on boats is

relevant to establishing Mr. Munhoven's knowledge and comparative fault. If the jury is aware that Mr. Munhoven had specific knowledge of people in the Ketchikan area or elsewhere that had been injured or killed in explosions while grinding or welding on boats, the jury will be assisted in evaluating the propriety of Mr. Munhoven's actions and his damages. *See* Fed. Evid. Rule 401. The Court should therefore deny the Plaintiffs' Motion *In Limine* No. 2.

### 2. Evidence of Welding Causing Boats To Explode Should Not Be Excluded Under Evidence Rule 403

The plaintiffs argue that evidence of injuries sustained by other persons in the Ketchikan area while welding on boats should be excluded under Federal Rule of Evidence 403. Motion *In Limine* No. 2 at 3-4. The plaintiffs reason that "[e]vidence that other persons have been injured while welding on boats in the Ketchikan area would give an unfairly prejudicial impression that plaintiffs should have known better than to perform routine and repair work on their skiff and that they are contributorily negligent for their injuries." *Id.* They then assert that, "Whether other persons have been injured while welding on boats in the Ketchikan area is not relevant to whether Plaintiffs were injured because Defendant negligently manufactured Plaintiffs' Reliance Model skiff." *Id.* Plaintiffs' arguments are unpersuasive.

Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The Ninth Circuit Court of Appeals has explained:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.
>
> As the Advisory Committee Notes to FRE 403 explain, unfair prejudice means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

*United States v. Hankey*, 203 F.3d 1160, 1172-73 (9th Cir. 2000). For the reasons provided above, evidence of explosions occurring because other persons in the Ketchikan area were welding on boats is relevant to establishing Mr. Munhoven's knowledge and his comparative fault.

Moreover, the plaintiff has failed to establish that the probative value of this evidence is substantially outweighed by

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2**
*Munhoven v. Northwind Marine, Inc.*, Case No. K03-004CV   Page 11 of 13

the danger of unfair prejudice. *See* Fed. Evid. Rule 403. The probative value of this evidence is quite high as it goes to the heart of Northwind's defense, i.e., whether Mr. Munhoven acted negligently. Obviously, evidence that establishes Mr. Munhoven's knowledge and negligent actions may cause the jury to find comparative fault, but the plaintiffs have failed to demonstrate that this evidence is *unfairly* prejudicial. *See also United States v. Sutton*, 970 F.2d 1001 (1st Cir. 1992) (noting that probative value of evidence of defendant's knowledge was not outweighed by its prejudicial effect).

Plaintiffs' arguments also contradict Alaska law. Northwind's possible negligence does not preclude the issue of Mr. Munhoven's own fault. Alaska has adopted a system of pure fault allocation that expressly permits comparative fault as a defense, regardless of whether the alleged tortfeasor is itself at fault. *See* AS 09.17.060 ("In an action based on fault seeking to recover damages for injury or death to a person or harm to property, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for the injury attributable to the claimant's contributory fault, but does not bar recovery.")

## CONCLUSION

For the reasons set forth above, the Court should deny the Plaintiffs' Motion *In Limine* No. 2.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2**
*Munhoven v. Northwind Marine, Inc.*, Case No. K03-004CV     Page 12 of 13

DATED at Anchorage, Alaska this 31st day of January, 2006.

DELANEY, WILES, HAYES,
GERETY, ELLIS & YOUNG, INC.
*Attorneys for Defendant NORTHWIND MARINE, INC.*

s/Andrew Guidi
Alaska Bar No.:  8312171
1007 West Third Avenue, Suite 400
Anchorage, Alaska   99501
PHONE:  907-279-3581/FAX:  907-277-1331

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January, 2006, a copy of **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2** was served electronically and via USPS, first class mail, postage prepaid on:

```
H. Clay Keene
KEENE & CURRALL
Currall Office Bldg.
540 Water Street, Suite 302
Ketchikan, AK 99901
```

s/Andrew Guidi (113219)