## OCEAN MARINE SURVEYORS, INC.

10821 Samish Island Road, Bow, WA. 98232
360-766-4160 • 360-766-4297 fax
oceanmarine@wavecable.com

December 19, 2005

Mr. Andrew Guidi
Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc.
1007 West Third Avenue
Suite 400
Anchorage, Alaska 99504

Re: *Donald G. Munhoven, et al v. Northwind Marine, Inc.*

Dear Mr. Guidi,

At your request, I have perused the November 2004 Summary/Status report of plaintiff's expert Mr. Edward Schaefer, Schaefer Engineering. It should be mentioned that I have not perused any of the listed attachments to Mr. Schaefer's report except my own report and photographs, 33CFR183, 46 CFR Subchapter T and C, and the depositions of Donald G. Munhoven 7/13-14/04 and Bruce Reagan 4/29/05.

Based on my review of the documents named above, my attendance on board the vessel, information relied upon, and my training and experience, I have formed preliminary opinions as to the cause of the explosion 12/08/01. I reserve the right to revise, amend, or alter this preliminary report based on new information and additional critical review.

Highlighting by bold lettering or underlining is used in this report by the undersigned for emphasis.

<u>Summary</u>
It is the opinion of the undersigned that the vessel had not been preserved prior to the undersigned's attendance and the cause and extent of damages survey was compromised.

It is the opinion of the undersigned that the vessel has struck rocks, resulting in cracks (fractures) in the vessel's structure.

December 19, 2005
page 2

It is the opinion of the undersigned that an explosion occurred.

It is the opinion of the undersigned that the explosion fuel was a flammable mixture within the vessel's center compartment.

It is the opinion of the undersigned that the flammable mixture was either gasoline or 2-cycle outboard motor oil and air.

It is the opinion of the undersigned that there are 4 possible sources of flammable mixtures contamination of the vessel's center compartment:
(1) leak from fuel tank caused by defective weld
(2) leak from fuel tank caused by striking rocks
(3) spilled gasoline (and water) on the deck entering the center compartment through fracture(s) in hull/deck connection, as a consequence of striking rocks.
(4) spilled 2-cycle lubricating oil (and water) on the deck entering the center compartment through fracture(s) in hull/deck connection, as a consequence of striking rocks.

It is the opinion of the undersigned that the ignition of the explosion was Mr. Munhoven's operation of an electric hand tool to open up a crack or fracture into the port chine.

It is the opinion of the undersigned that the port chine notch, reportedly the location of a crack or fracture noticed by Mr. Munhoven, is located above the vessel's at-rest waterline and, therefore, could not logically be the source of liquid contamination in the center compartment, leading to the suspicion of additional fractures admitting water.

It is the opinion of the undersigned that the source of flammable material was, more likely than not, not a defective weld by Northwind Marine because the liquid contamination discovered in the center compartment was reportedly first noticed by sound "in Dec. 2001". (The vessel was reportedly delivered in March 1997.)

It is the opinion of the undersigned that the explosion was a consequence of improper hot work repairs to striking rocks damages to the vessel's hull.

It is the opinion of the undersigned that the services of a certified marine chemist should have been obtained to determine how the repairs could be safely effected.

It is the opinion of the undersigned that it is the responsibility of the vessel repairer to retain the services of a marine chemist.

December 19, 2005
page 3

It is the opinion of the undersigned that the 3/4" deep by 1 1/2" long notch in the port chine, reportedly the site of Mr. Munhoven's use of the electric hand tool, shows that substantially more repair activity had taken place there than that which would be expected if, as Mr. Schaefer has stated, "Don got as far as touching the hull with a grinder (wire wheel) when the explosion occurred".

It is the opinion of the undersigned that arc welding repairs would be necessary to effect repairs in accordance with good marine practices to the crack/fracture notch at the port chine which Mr. Munhoven opened up with his grinder (wire brush).

It is the opinion of the undersigned that it is does not matter if Mr. Munhoven was grinding, wire brushing, or arc welding at the time of the explosion. All three operations are capable of igniting a flammable mixture of gasoline and air, or 2-cycle oil and air.

It is the opinion of the undersigned that fuel tanks are not required to be "accessible". Only the fill, vent, pick up tube, and label must be accessible.

It is the opinion of the undersigned that the Reliance Work Skiff meets the accessibility requirements of the fuel system standards.

<u>Availability of Additional Information</u>
It is noted that Mr. Schaefer's report attachments include:
   "*#10. Twenty one color copies of the subject vessel*"
   "*#11. Thirty two color photos Bates stamps NM-00411 through NM-00442*"

Mr. Schaefer considers that the above 53 photographs are not his or mine. I am unaware as to the origin of these photos and request that they be made available for my review.

If plaintiffs received a FOIA response from the U.S. Coast Guard Marine Safety Detachment, Ketchikan, Tim Clepper's investigation into this matter, are his photographs, report, and notes available for my review?

<u>Schaefer Engineering Summary Status Report 11/2004</u>
Mr. Schaefer's report, page 2, last paragraph, states the following:
   "*The center compartment, the largest, had two longitudinal support structures
   on each side of the centerline (four total) which extended the full length of the
   center compartment. Transverse square aluminum tubing provided additional
   support for the deck plating. An aluminum deck plate (two total) comprised
   the decking from the hull to just inboard of the inboard longitudinal support*

EXHIBIT D
Page 3 of 15

NM-00852
Munhoven v. Northwind Marine

December 19, 2005
page 4

> and ran the full length of the center compartment. An aluminum gas tank was welded to the under side of the center deck plate. The center deck plate comprised the top of the fuel tank, i.e., the fuel tank was an integral part of the boat structure. This construction can be seen in Image 37. This fuel tank construction violated 33CFR183.550 and/or 46CFR182.435."

<u>33 Code of Federal Regulations, part 183 - Boats and associated equipment</u>
General 183.501 - Applicability
(a) This subpart applies to <u>all recreational vessels</u> that have gasoline engines for electrical generation or mechanical power for propulsion, except <u>*outboard engines*</u>.

It is the opinion of the undesigned that 33CFR part 183 does not apply to the Reliance Work Skiff because it is powered by an outboard motor and because it is not used solely as a private pleasure vessel. However, let's examine 183.550 in detail anyway.

> *183.550 Fuel tanks: Installation*
> (a) *Each fuel tank must not be integral with any boat structure or mounted on an engine.*
>
> (b) *Each fuel tank must not move at the mounting surface more than one-fourth inch in any direction.*
>
> (c) *Each fuel tank must not support a deck, bulkhead, or other structural component.*
>
> (d) *Water must drain from the surface of each metallic fuel tank when the boat is in its static floating position.*
>
> (e) *Each fuel tank support, chock, or strap that is not integral with a metallic fuel tank must be insulated from the tank surface by a non-moisture absorbing material.*
>
> (f) *Cellular plastic must not be the sole support for a metallic fuel tank.*
>
> (g) *If cellular plastic is the sole support of a nonmetallic fuel tank, the cellular plastic must meet the requirements of Section 183.516(b) or (c).*
>
> (h) *Each fuel tank labeled under Section 184.514(b)(8) for installation aft of the boat's half length must be installed with its center of gravity aft of the boat's half length.*

EXHIBIT D
Page 4 of 15
NM-00853
Munhoven v. Northwind Marine

December 19, 2005
page 5

The American Boat and Yacht Council Inc. (ABYC) has prepared Compliance Guidelines for Federal Regulations for Recreational Vessels for boat builders for fuel, ventilation, and electrical systems. The following is from the ABYC Fuel Compliance Guidelines Introduction:

> *"Regulations are typically written in concise terms, the words and arrangements chosen to be enforceable and in some cases to be legally interpreted. A regulatory format does not allow for explanations, recommendations and easily detected alternate solutions. A regulation provides an outline about which a great deal of further information, interpretation, explanation, clarification and some helpful hints are needed in order to provide a good understanding and compliance with its intent.*
>
> *This fuel system guideline assists the designer, boat builder, surveyor and repairer to achieve compliance with the regulation. The guideline explains, interprets, clarifies, provides alternatives, diagrams, tabulates, make recommendations, and in general, compliments the regulation to improve the user's understanding.*

The following comments (a) through (h), correspond to the above 33 CFR 183.550 (a) through (h).
(a) Each fuel tank must not be integral with any boat structure:
The ABYC Compliance Guide statement "to determine whether the intent of this regulation is met, the following question must be answered affirmatively - Is the deck, bulkhead or other structural component properly supported to function as intended with the fuel tank removed?" "The structure will not collapse if the tank is removed."

It is the opinion of the undersigned that the vessel's deck is supported by welded connections as follows:
   (1) bulkhead #1
   (2) bulkhead #2
   (3) 2 each port and starboard full length hull longitudinals
   (4) 7 deck beams
   (5) welded attachment of deck to port and starboard side shell structure

Consequently, it is the opinion of the undersigned that the fuel tank <u>does not support</u> the vessel's deck; instead, the fuel tank is supported by the deck in compliance with this standard.

EXHIBIT D
Page 5 of 15

It is the opinion of the undersigned that removal of the fuel tank does not lessen support of

December 19, 2005
page 6

the deck and the deck would function as intended (except its self-bailing function) and the vessel could function perfectly well as an open vessel with the deck drain threaded plugs installed in order to provide sufficient freeboard for operation.

(b) Each fuel tank must not move at the mounting surface more than 1/4" in any direction:
The Reliance Work Skiff fuel tank top is welded to the deck 3" outboard of the tank top around its entire circumference.

(c) Each fuel tank must not support a deck, bulkhead, or other structural component. (See above) It is noted that the Compliance Guidelines states: *"The Coast Guard has also accepted fuel tanks specifically designed to be walked or sat on."*

(d) Water must drain from the surface of each metallic fuel tank when the boat is in its static floating position.
It is the opinion of the undersigned that water would drain from the tank top with gravity. It is the opinion of the undersigned that the sides and bottom of the tank had no restriction to drainage, and the tank was not corroded nor stained.

(e) Each fuel tank support, chock, strap that is not integral with a metallic fuel tank must be insulated from the tank surface by a non-moisture absorbing material.
It is the opinion of the undersigned that the tank is securely affixed by welding about its top circumference, and there are no other tank supports, and the corrosion potential of salt water corrosion in way of the tank supports, chocks, straps of non-moisture absorbing material is not present.

(f) Cellular plastic must not be the sole support for a metallic fuel tank.
It is the opinion of the undersigned that no cellular plastic is used in this installation and this requirement does not apply.

(g) If cellular plastic is the sole support of a nonmetallic fuel tank, the cellular plastic must meet the requirements of Section 183.516(b) or (c). (See above)

(h) Each fuel tank labeled under Section 184.514(b)(8) for installation aft of the boat's half length must be installed with its center of gravity aft of the boat's half length.
It is the opinion of the undersigned that the fuel tank is not labeled for installation with its center of gravity aft of its half length, thus this requirement does not apply.

December 19, 2005
page 7

<u>46 Code of Federal Regulations</u>
46CFR Subchapter T refers to U S. Coast Guard-inspected small passenger vessels (under 100 gross tons), parts 175 - 187.

It is the opinion of the undersigned that 46CFR Subchapter T does not apply to the Reliance Work Skiff.

182.15-25 Gasoline fuel tanks - states "Fuel tanks must be independent of the hull."

See detailed discussion of 33 CFR fuel tank installation requirements above.

46 Code of Federal Regulations, Subchapter C Uninspected Vessels
It is the opinion of the undersigned that Subchapter C <u>does apply</u> to the Reliance Work Skiff generally, but the only requirement, 25.40 - Ventilation - does not require that the Reliance Work Skiff have ventilation provided to the fuel tank space because it is an "open boat", and there is no ignition source within the compartment containing the fuel tank.
> *"(b) As used in this section, the term "open boats" means those motorboats or motor vessels with all engine and fuel tank compartments, and other spaces to which explosive or flammable gases and vapors from these compartments may flow, open to the atmosphere and so arranged as to prevent the entrapment of such gases and vapors within the vessel."*

<u>Other Standards</u>
<u>American Boat and Yacht Council (ABYC) Recreational Vessel Standards</u>
The preface to the ABYC states: "Standards and technical information reports are advisory only; their use is entirely voluntary. They are guides to achieving a specific level of design or performance, and are not intended to preclude attainment of desired results by other means. The ABYC standards and technical information reports are subject to periodic review and users are cautioned to obtain the latest revision."

It is the opinion of the undersigned that ABYC recommendations follow the federal regulations described above regarding gasoline fuel systems.

Mr. Schaefer's report states the following:
> *"The center compartment, defectively, was provided neither with any means to sound any liquid accumulation, nor any means to remove any liquid accumulation."*

It is the opinion of the undersigned that there are no regulatory standards which requires

December 19, 2005
page 8

a means to sound any liquid accumulation nor any means to remove any liquid contamination from a hull void.

It is the opinion of the undesigned that vessels may contain voids and/or hollow structures which are not provided with access.

It is the opinion of the undersigned that bulkhead or transom drain plugs would not have prevented a hot work-caused explosion, unless the space had been treated as recommended by a marine chemist before the hot work was initiated.

NFPA 302   Fire Protection Standard for Pleasure and Commercial Motor Craft, 1998
   5-3.1   Gasoline fuel tanks shall not be integral with the hull structure. (See above 33CFR discussion for the undersigned's comments.)

   5-4.4, 5-4.5, 5-4.6   Referring to fuel tank testing
      The undersigned is not aware of Northwind Marine's tank tests at this writing.

   5-4.9   Label
      It is the opinion of the undesigned that no label was identified on the fuel tank during the undersigned's attendance.

   5-5.2   The tank(s) shall be installed in such a manner that means for maintenance or replacement is provided or indicated so that it can be accomplished without compromising the structural integrity of the vessel.

It is the opinion of the undersigned that, assuming that a marine chemist inerts the center compartment and the fuel tank, and the fill, vent, supply, and gauge sender are disconnected, the circumference of the fuel tank could be laid out on the deck with a straight edge and felt tip pen. An air-powered carbide saw could then be used to saw out the deck plate so that the tank could be lifted straight up to remove it from the vessel. The tank reinstallation would be the reverse of the removal process.

It is the opinion of the undersigned that removal of the tank would not jeopardize the structural integrity of the vessel, or the fuel tank.

<u>Explosion</u>
Mr. Schaefer considers that the explosion fuel was gasoline (only). Mr. Schaefer's report implies what the ignition source was, but has no other comments.

December 19, 2005
page 11

The Emergency Response Guide Book contains the following warning for both gasoline and Naphtha contained in 2-cycle oil:

<u>"Guide 128 Flammable Liquids (Non-Polar/Water-Immersible)</u>
Potential Hazards
FIRE AND EXPLOSION
- HIGHLY FLAMMABLE: Will be easily ignited by heat, sparks or flames.
- Vapors may form explosive mixtures with air.
- Vapors may travel to source of ignition and flash back.
- Most vapors are heavier than air. They will spread along ground and collect in low or confined areas (sewers, basements, tanks).
- Vapor explosion hazard indoors, outdoors or in sewers.
- Those substances designated with "P" may polymerize explosively when heated or involved in a fire. Runoff of sewer may create fire or explosion hazard.
- Containers may explode when heated.
- Many liquids are lighter than water.
- Substance may be transported hot."

<u>Chevron 2-cycle oil container carries the following warning:</u>
"DO NOT USE OR STORE near heat, sparks or open flames. USE OR STORE ONLY IN A WELL-VENTILATED AREA. Keep container closed when material is not in use. Clean up spills immediately. Eliminate all sources of ignition in the vicinity of spill or released vapor. Liquid evaporates quickly and forms vapors (fumes) which can catch fire and burn with explosive force. Invisible vapor spreads easily and can be set on fire by many sources such as pilot lights, welding equipment and electrical motors and switches. Fire hazard is greater as liquid temperature rises above 85°F."

<u>Marine Chemist - Safe for Hot Work</u>
It has been reported that shipyard accident rates greatly increased during World War I when large numbers of war-damaged vessels which had either burned petroleum products for fuel or carried bulk petroleum products were repaired. To try to lower the accident rate, The American Bureau of Shipping trained the first marine chemists to determine the cleanliness conditions necessary before a space was to be considered to be safe for workmen, or safe for hot work.

Hot work is described as "Work involving burning, welding, or a similar operation that is capable of initiating fire or explosions".

December 19, 2005
page 12

Hot work conditions requiring a marine chemist's certificate:
1) within, on, or immediately adjacent to spaces that contain, or have contained oil.
2) within, on, or immediately adjacent to fuel tanks that contain or have contained fuel
3) on pipelines, heating coils, pump fittings or other accessories connected to spaces that contain or have last contained oil

The National Fire Protection Association assumed this program and has prepared NFPA 306 Standard for Control of Gas Hazards on Board Vessels to guide marine chemists in their work.

NFPA 306   Control of Gas Hazards on board Vessels, 2003
Scope: 306 applies to all vessels carrying flammable liquids or burning them as fuel

4.6.2   *It is the responsibility of the vessel repairer to retain the services of a marine chemist, to secure copies of his certificate and to provide the master of the vessel and the representatives of the vessel owner with copies of such certificate.*

4.3.4   *Safe for hot work: means that in a space*
*(1) the oxygen content is less than 22%*
*(2) the concentration of flammable materials in air is less than 10% of the lower explosive limit*
*(3) the residues, scale or preservative coatings are cleaned sufficiently to prevent change in 1 or 2*
*(4) all adjacent spaces containing or having contained flammable or combustible materials are sufficiently cleaned of residues*

NFPA 312   Standard for Fire Protection of Vessels During Construction, Repair and Lay Up, 2000 Edition:

2.5.4   *Before hot work.....on any fuel spaces, including fuel tanks......or other areas that contain or have contained flammable or combustible liquids or vapor.....certificate shall be obtained in accordance with NFPA 306 Control of Gas Hazards on board Vessels.*

2.5.1   *It shall be the responsibility of yard management to determine that any hot work or other fire or spark producing operations proceed with safety.*

NFPA 51B   Standard for Fire Prevention During Welding, Cutting, and Other Hot Work

December 19, 2005
page 13

Fuel Tank Accessibility

It is the opinion of the undersigned that fuel tanks are not required to be "accessible". Only the fill, vent, pick up tube, (and label) must be accessible and are accessible on this vessel.

It is the opinion of the undersigned that the Reliance Work Skiff fuel tank fill, vent, and pick up tube were accessible.


Information Relied Upon

| | |
|---|---|
| 33CFR | Part 183 Boats and Associated Equipment |
| 46CFR | Subchapter T Small Passenger Vessels (Under 100 gross tons) |
| | Subchapter C Uninspected Vessels |
| NFPA 921 | Guide for Fire and Explosion Investigation, 2004 edition |
| NFPA 306 | Standard for Control of Gas Hazards on Vessels, 2003 edition |
| NFPA 51 | Standard for Fire Prevention During Welding, Cutting, and Other Hot Work |
| NFPA 312 | Standard for Fire Protection of Vessels During Construction and Lay up for Repair, 2000 Edition |
| NFPA 302 | Fire Protection Standard for Pleasure and Commercial Motor Craft |

American Welding Society, Guide for Aluminum Hull Welding, 1981
ABYC Standards and Technical Information Reports for Small Craft, July 2005
ABYC Compliance Guideline - Ventilation
ABYC Compliance Guideline - Fuel
ABYC Standards and Recommendations for Small Craft - Various
Dave Gerr, The Elements of Boat Strength, International Marine, 1999
Edward Sherman, Outboard Engines, International Marine, 1997
Cyrus Hamlin, Preliminary Design of Boats and Ships, Cornell Maritime Press, 1989
Alan Osbourne, Modern Marine Engineers Manual, Vol., Cornell Maritime Press, 1943
U. S. Department of Transportation, Emergency Response Handbook, 2000
U. S. Department of Health and Human Services, Niosh Pocket Guide to Chemical Hazards
Chevron 2-cycle Oil Container Warning
Yamaha Yamalube® 2-cycle oil container warning
(4) 8" x 10" photographs
Deposition of Donald G. Munhoven 7/13/04 and 7/14/04
Deposition of Bruce Reagan 4/29/05

December 19, 2005
page 14

| | |
|---|---|
| <u>Definitions</u> | |
| Accessible: | (ABYC) capable of being reached for inspection, removal, or maintenance without removal of permanent boat structure |
| Chine: | the structure on a vessel's hull where the sides and bottom meet |
| Bulkhead: | transverse and longitudinal partitions separating portions of a vessel. Some bulkheads are water (or oil) tight and some are only partition bulkheads. Some are mere partitions, while others are a component of the vessel's structure. |
| CVK: | center vertical keel |
| Motor bar: | transom in way of outboard motor transom clamp assembly |
| Self-bailing: | vessel is capable of de-watering rain, sea spray, or wash down water automatically through drains through hull sides |
| Freeboard: | the vertical distance from the waterline to the deck drains in the hull side |
| Draft: | depth of water displaced by the vessel |
| Port: | left |
| Starboard: | right |
| Arc: | a high temperature luminous electric discharge across a gap or through a medium such as charred insulation. Temperatures within the arc are in the range of several thousand degrees. |
| Parting Arc: | a brief discharge that occurs as an energized electrical path is opened while current is flowing, such as by turning off a switch or pulling a plug. Motors with brushes may produce nearly continuous display of arcing between the brushes and commuter. Ordinary parting arcs in electrical systems are usually so brief and of low enough energy that <u>only combustible gases, vapors, and dusts can be ignited.</u> |

EXHIBIT D
Page 14 of 15

NM-00863
Munhoven v. Northwind Marine

December 19, 2005
page 15

| | |
|---|---|
| Hot Work: | any activity involving riveting, welding, burning, the use of powder activated tools or similar operations, as well as grinding, drilling, abrasive blasting, or similar operations not isolated physically from any atmosphere containing more than 10 percent of the lower explosive limit of a flammable or combustible substance. |
| Flammable: | capable of burning with a flame |
| Flammable limit: | the upper or lower concentration limit at a specified temperature and press of a flammable gas or a vapor of an ignitable liquid and air, expressed as a percentage of fuel volume that can be ignited. |
| Spark: | a moving particle of solid material that emits radiant energy, due either to its temperature or the process of combustion on its surface |
| Non-Sparking: | aluminum is non-sparking; sawing, drilling, grinding does not produce sparks |

Without prejudice,
Ocean Marine Surveyors, Inc.

David B. Cater, NAMS-CMS

DBC:jc
encl.

EXHIBIT D
Page 15 of 15
NM-00864
Munhoven v. Northwind Marine